## RIDDLE *against* POORMAN and Others, Executors of HOFMAN.

### IN ERROR.

Where an attorney gave the following receipt, "Lodged in my hands, a judgment bill granted by M. to H. for the sum of twelve hundred dollars due, &c. which is entered up in B. county which I am to have recovered if that can be accomplished." *Held:* that he was bound to make good the collection of the judgment so far as it was practicable by the application of reasonable diligence, skill and attention, although he did not reside or practice in the county where the judgment was entered.

ERROR to the Common Pleas of *Franklin* county.

This was an action on the case against the plaintiff in error for negligence as an attorney brought by the defendants in error.

The liability of the defendant below depended upon the construction of a receipt which he had given to the defendant's testator, and the circumstances which occurred. The receipt was in these words:

"Lodged in my hands, a judgment bill granted by *Henry F. Molwitz* to *Henry Hoffman*, for the sum of twelve hundred dollars, due with interest since the 15th May, 1811, which is entered up in Bedford county, which I am to have recovered if that can be accomplished." On the 7th of June, 1816, when this receipt was given, the plaintiff in error, who resided in *Chambersburg*, *Franklin* county, did not practice in *Bedford* county. He had done so formerly, but had discontinued his practice there for some years.

He committed the collection of the judgment, to his brother, *Samuel Riddle* Esquire, who then resided in *Bedford* county, practiced law there, possessed a large property, and enjoyed the confidence of the public both as an attorney, and a man. He continued in good credit and circumstances until 1819 or 1820; he died in 1823.

The real estate of *Henry F. Molwitz* was sold on an execution and on the 6th of August, 1816, *S. Riddle* as the attorney of *Hoffman* and Mr. *M'Culloh* the attorney of a subsequent judgment-creditor took a rule on the sheriff to bring the money into court. The sheriff filed an appropriation applying the money to *Hoffman's* judg-

ment, and the subsequent judgment creditor abondoned his claim. *Hoffman* died in the fall of that year.    No suit was brought against the sheriff or his sureties.    The sheriff became insolvent and was discharged as such on the 22nd day of November, 1819.

A verdict passed for the plaintiff, and the cause was now argued on an exception to the charge of the court, which is fully stated in the opinion of this court.

*Chambers*, for the plaintiff in error.

*M'Culloh*, for the defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—The errors assigned in this case all relate to that part of the charge of the court below to the jury, in which they told them "that if they believed that the plaintiff in error appointed *Samuel Riddle* to attend to the business without consulting *Hoffman*, he, (the plaintiff in error) was bound by his undertaking of the 7th of June, 1816, to pay such attention to the business in the hands of the attorney, he should appoint, as a prudent man would bestow on such case of his own in the hands of such counsel at such a distance, to see that it was properly attended to." This is the only part of the charge complained of by the plaintiff in error, and in which he says there is error.    It will therefore be considered as but one error.

The undertaking of the 7th of June, 1816, referred to by the court below, was a receipt in writing given by the plaintiff in error to *Henry Hoffman* the testator of the defendants in error.    It was drawn up by the plaintiff in error himself in the following terms, "Lodged in my hands a judgment bill granted by *Henry F. Molwitz* to *Henry Hoffman* for the sum of $1200 due with interest since the 15th of May 1811, which is entered up in *Bedford* county, which I am to have recovered if that can be accomplished."

The plaintiff in error was, at the time of signing and giving this receipt a practicing attorney at law resident in *Chambersburg*, *Franklin* county, *Pennsylvania*, where he gave the receipt.    He had some time previous to that practiced also in *Bedford* county, where the judgment was entered, but had discontinued his practice there for some time.    His brother, *Samuel Riddle*, however, resided in *Bedford* at that time, and attended to the practice of the law, and to him the plaintiff in error committed the collection of the judgment mentioned in the receipt.

It is admitted as I understand, that if the plaintiff in error had employed words in the receipt, shewing clearly that he intended to collect in person the amount of the judgment, and had afterwards

29

employed another to do it for him, through whose negligence the money had been lost, that he would be liable for it to the testator, or his personal representatives; but it is contended as he has used words of a different import, shewing that he did not intend to collect the money himself, but to have it collected by another, he only made himself, by the tenor of his receipt, accountable for the professional skill of the attorney to be employed by him for that purpose, and for his ability to pay over the money to the testator or his representatives when collected.

I am not aware that it ought to make much difference in the extent of a man's liability under his engagement, where he undertakes positively to have the thing done, whether it is to be performed by himself in person, or by another to be employed by him for that purpose. For although he should engage positively to do it himself, yet if he does it by another it will be a good performance of his engagement. In this case it appears to me from the terms of the receipt, that more was intended by the plaintiff in error, and that more was expected by the testator than is now contended for by the counsel of the plaintiff in error. Had it been his intention to have made himself accountable to the testator for putting the collection of the judgment into the hands of a skillful and responsible attorney at law only, he would have used a different form of words; and instead of saying "which I am to have recovered if that can be accomplished," he would have said, "which I am to put into the hands of some competent person for collection," or words of similar import. Had the receipt been couched in terms like these last, no other expectation could well have been raised on the part of the testator, than that which it is now contended, the words contained in the receipt, ought to have produced.

I believe it has often occurred that a gentleman of the bar, has, at the request of an acquaintance, performed professional services, sent a claim for collection to another distant member of the bar, within the circle of whose practice the debtor happened to reside, without intending to make himself responsible for the collection of it: but I can scarcely think where such was the understanding of the parties, that a receipt drawn up in terms similar to the present was ever given. Indeed where the engagement is merely that he will send the claim to some competent person for collection; and having done that and informed the creditor of the person to whom it has been sent, there is no pretence for holding him to further liability.

I cannot persuade myself that this was all that was intended in the present case: If it were, why were these words "which I am to have recovered if it can be accomplished" inserted in the receipt? They contain an express and positive undertaking for the result,

(Riddle *v.* Poorman.)

that is, for the collection of the money if practicable, and not merely for the employment of a suitable person to accomplish that end; but that the end itself, if practicable, shall be accomplished. If the plaintiff in error had intended to make himself personally liable to the testator for the collection of the judgment, and the payment of it over to him, when collected, I do not know that he could have used terms, so concise that were better suited to raise that expectation in the testator, and to impose such obligation upon himself. The undertaking is very explicit, and general, without any restriction or qualification, other than the impossibility of accomplishing it. How then can we by construction narrow and restrain the common and ordinary import of the terms contained in the receipt, and say that the plaintiff in error, thereby bound himself only to put the judgment of the testator into the care of a competent person for collection, and to inform the testator of the person to whom he had confided the trust; and that after having done this his further responsibility was at an end.

I repeat again that the plaintiff in error undertook expressly to have the amount of the judgment collected if it could be accomplished. In this undertaking there was also an implied undertaking that the money when collected should be paid over to the testator, or his personal representatives. The testator then had from the very terms of the undertaking every reason to believe, and expect that the plaintiff in error would at least cause his money to be collected if possible, and paid over to him or his representatives. It also appears to me that the plaintiff in error must have been conscious at the time of giving the receipt, that this was the expectation raised, on the part of the testator by the terms used in it, and I therefore consider him bound by every principle of moral and legal obligation to make good the collection of the judgment to the defendants in error, so far as it was practicable, by the application of reasonable diligence, skill and attention. The direction of the court below does not therefore appear to have been more unfavorable to the plaintiff in error than from a fair interpretation of the terms of his receipt it ought to have been.

Judgment affirmed.